RITTENHOUSE *vs.* TOMLINSON'S EXECUTORS.

1. Defendants' testator sold fifty shares of stock of the Central Railroad Company of New Jersey, and loaned the proceeds thereof, $4981.25, to the complainants, taking their promissory note therefor, payable to his order, twelve months after date, with interest from date. Complainants allege that the note was not intended to be a part of the contract, but merely a memorandum and evidence of the indebtedness, and that the contract really was that defendants' testator should have the dividends on fifty shares of said stock, and should receive fifty shares of capital stock in re-payment of the loan. They seek specific performance of this alleged agreement, and injunction to restrain defendants from parting with or suing upon the note. Relief refused.

2. Evidence of a contemporaneous understanding and agreement between the parties, by parol proof merely, in the absence of any allegation or pretence of fraud, accident or mistake, is inadmissible to vary a contract in writing.

Bill for relief. Motion to dissolve injunction on bill.

*Mr. J. R. Emery*, for motion.

*Mr. G. A. Allen, contra.*

THE CHANCELLOR.

The bill is filed to compel specific performance of a parol contract to pay $4981.25, in the stock of the Central Railroad Company of New Jersey. The defendants are the executors of Charles Tomlinson, deceased. In January, 1874, Moses

Rittenhouse and Thomas B. Rittenhouse, then his partner in business in New York, under the firm of M. Rittenhouse and Brother, applied to Tomlinson for a loan of $5000. To accommodate them, and with that object alone, he sold fifty shares of the capital stock of the above-named company, owned by him, in order to raise the money they desired to borrow. Having thus raised $4981.25, he lent it to them, taking their promissory note therefor, dated January 22d, 1874, and payable to him or his order, twelve months after date, with interest from date. The bill alleges that the note was not regarded as, nor intended to be, a part of the contract between him and them, but was to be, and was, merely a memorandum and evidence of the indebtedness, while the understanding and agreement really were that he should have the same dividends as should be declared, from time to time, by the railroad company, as long as the Rittenhouses should retain the money, as and for and in lieu of interest on the loan; and that he should receive fifty shares of the capital stock of the company in re-payment of the loan. The bill further states that Thomas B. Rittenhouse having retired from the firm of M. Rittenhouse and Brother, and George M. Rittenhouse having taken his place therein, a new note, made by Moses and George, dated April 1st, 1875, for the same sum, and payable one day after date to Tomlinson, or his order, with interest, was given to the latter in lieu of the note first mentioned; and that it was given and accepted on the same agreement and understanding as the former note. It further states that from time to time, up to near the time of his death, the makers of the notes paid to Tomlinson, in lieu of interest, the amount of the dividends declared by the company on fifty shares of the stock, and he receipted for the payments accordingly; and that the amount of the dividend declared in July, 1875, was tendered to him, but by reason of his illness it was not received by him. It appears, by the bill, that after his death, which occurred on the 5th of August, 1875, the makers of the new note paid no money for dividends, although the railroad company continued to declare them up to July, 1876;

and that on the 7th of April, in that year, they paid to one of the executors, " on account of their indebtedness," $348.68. On the 8th of July, 1876, they tendered to the defendants, fifty shares of the stock of the company, " with all arrearages of dividends remaining due and unpaid since Tomlinson's death, being the sum of $172.05," but the executors refused to accept the stock and deliver up the note. The bill prays that specific performance of the agreement may be decreed, and that the defendants may be enjoined from parting with or suing upon the note. On the filing of the bill, a preliminary injunction was issued.

The complainants seek to compel specific performance of a parol contract, on the part of Tomlinson, to accept stock in re-payment of the loan. It appears by the bill that for this loan, they delivered to him their promissory note, payable with interest. They say, however, that the note was not intended to be regarded as evidence of an obligation to re-pay the money, but as a memorandum and evidence of debt, merely. No mistake, accident or fraud is alleged. The complainants seek to avoid the obligation of the note by contradicting its terms by parol evidence. It is an absolute obligation to pay money. They propose to show, by parol proof, that it was not intended to be an obligation to pay money, at all. A familiar rule of evidence forbids the admission of such proof to contradict the terms of the note. They ask that a decree of specific performance may be made upon a contract in writing, as varied by a contemporaneous understanding and agreement, which are to be evidenced by parol proof, merely. In order to give them the relief they seek, this court must first establish the variations by substituting the parol agreement for the written one, and that, too, as before remarked, in the absence of any allegation or pretence of fraud, accident or mistake. The evidence ought not to be received. It is not probable, apart from this objection, that the agreement alleged in the bill could be established. Tomlinson, merely for the accommodation of the Rittenhouses, converted a then valuable stock into cash. It is not reasonable to suppose that in so

doing, he stipulated for the re-payment of the loan, at the mere option of the borrowers as to time, ("when they were through with the use of the money and desired to return it," as the bill expresses it,) retaining no power to compel its re-payment in cash, but agreeing to receive stock in payment, without regard to its market value; in other words, that he thus loaned the money for an indefinite period, without security, and on an agreement that it was to be re-paid only in stock, to be delivered to him, not on demand nor yet on notice, but whenever the Rittenhouses should see fit. In fact, it appears by the bill that it was not until after the company had failed to pay a dividend, that the Rittenhouses offered to re-pay the loan in stock. Again, after Tomlinson's death, they paid interest, at seven per cent. per annum, on the note, notwithstanding the fact that dividends had been declared by the company for the time for which the interest was paid. They say that they were prepared to pay him an amount equal to the dividend of July, 1875, on fifty shares of stock, but that he declined to receive it because of his extreme illness, which wholly incapacitated him from attending to business. They also say that the company paid dividends up to July, 1876, when it failed to pay any. There was, therefore, due from them in April, 1876, a sum equal to the dividends of July and October, 1875, and January and April, 1876, which, all together, amounted to ten per cent. Yet in the month last mentioned, they paid to the executors $348.68, the amount of the interest at seven per cent., for one year, on the amount of the note. It is true they offered to pay "arrearages of dividends" in July, 1876, but it was not until the time when they tendered the stock in payment of the loan. As the transaction between the complainants and Tomlinson is presented by the bill, it would be exceedingly unfair to compel the estate of the latter to receive depreciated stock, of less value than the amount of the loan, in payment of the loan. That the stock is depreciated, may, without reference to the quotations of the stock market, be fairly assumed, from the fact stated by the bill, that the company failed to pay a dividend in July, 1876,

:and the fact also there stated, that the complainants have purchased the stock in order to pay off the loan with it.

The understanding between the parties probably was, that in view of the fact that Tomlinson had sold valuable and pro-·ductive stock to raise money, merely for the accommodation of the Rittenhouses, they would, notwithstanding that the note was the legal evidence of their contract, see to it that he should suffer no loss by his kindness in accommodating them. The. obligation thus to indemnify him probably was understood to rest merely in honor. The claim to relief, as it appears from the statements of the bill, by no means commends itself to favorable consideration.

The injunction will be dissolved, with costs. Had it been ·retained until the hearing, it would have been on terms that the complainants pay into court the amount due on the note, ·according to its terms, for principal and interest, or give .security for the payment of the note, in case the bill should be dismissed.